IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MELISSA TIPTON                                                              PLAINTIFF

      v.                     Civil No. 2:15-cv-2190-PKH-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Melissa Tipton, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1382.  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.  Procedural Background

Plaintiff filed her application for SSI on May 9, 2013, alleging an amended onset date of May 6, 2013, due to neuropathy, blood glucose problems, and back problems.  (Tr. 65, 74, 140-148, 171, 193-194, 219-220)  The Commissioner denied her application initially and on reconsideration.  At the Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative hearing on March 5, 2014.  (Tr. 44-63)  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 42 years old and possessed an eighth grade education.  (Tr. 79, 140, 172)  She had no past relevant work ("PRW") experience.  (Tr. 16, 50, 172, 179, 185-192, 211-218)

On July 11, 2014, the ALJ concluded that the Plaintiff's diabetic or other neuropathy and disorders of the back were severe, but he concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 12) He then found Plaintiff capable of performing sedentary work with frequent pushing, pulling, reaching overhead and handling bilaterally; occasional climbing of ramps or stairs, stooping, balancing, kneeling, crouching, and crawling; and, never climbing ladders/ropes/scaffolds. (Tr. 13) With the assistance of a vocational expert, the ALJ found the Plaintiff could perform work as a small production machine operator and small product assembler. (Tr. 16)

The Appeals Council denied the Plaintiff's request for review on August 5, 2015. (Tr. 1-4) Subsequently, Plaintiff filed this action. (ECF No. 1) This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 11, 12)

**II.    Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

**III.** **Discussion**

Of particular concern to the undersigned is the ALJ's RFC determination in this case. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The Commissioner will generally give a treating physician's opinion on the issue of the nature and severity of an impairment(s) "controlling weight" when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Further, greater weight is typically afforded to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist. *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010) *(*quoting *Thomas v. Barnhart*, 130 Fed. Appx. 62, 64 (8th Cir. 2005) (unpublished per curiam)).

The records reveal Plaintiff has suffered from chronic pain since at least 2007. An MRI of her lumbar spine conducted in July, 2011, showed a disk herniation at the L5-S1 level. (Tr. 329)

Later that month, neurosurgeon, Dr. Shawn Moore, noted weakness and sensory abnormalities in the left lower extremity, decreased sensation in the right lower extremity, a markedly decreased range of motion in lumbar spine, and a positive straight leg raise test on the left. (Tr. 327-329) Accordingly, he performed an L5-S1 microdiscectomy. In November, 2011, Plaintiff again reported severe back pain throughout her spine. (Tr. 509-511) Surgery had improved her leg pain, but she could not afford the injections recommended by her doctor to treat the back pain. These injections reportedly cost $1,800 per injection. At this time, Plaintiff's treating physician, Dr. Carolyn Dillard, noted an abnormal gait.

By February, 2012, Plaintiff was having episodes of swelling in her feet, hands, and face. (Tr. 505-508) Her nail beds were also turning black. Dr. Dillard diagnosed fatigue, idiopathic progressive polyneuropathy, and edema. In February, 2013, Plaintiff slipped and fell in the bathtub, reinjuring her back. (Tr. 497-500) She reported shooting pain down her leg. An examination revealed paravertebral spasm in the lower back. Plaintiff was prescribed Hydrocodone. Records reveal she was consistently prescribed Hydrocodone and Flexeril during the relevant time period.

In May, 2013, Plaintiff complained of severe neck and back pain with radicular symptoms into her upper extremities and associated weakness, numbness, and loss of dexterity in her hands. (Tr. 454-455) Lower back pain with radiculopathy into her lower extremity and ataxia also remained problematic. Dr. Shawn Moor noted weakness and loss of sensation in her bilateral upper extremities and left lower extremity. His main concern was for the upper extremity symptoms and ataxia. Accordingly, he ordered an MRI of her cervical spine, which revealed multilevel degenerative disk disease, disk bulging, and mild canal stenosis throughout the cervical spine, but most prominent at the C5-6 level where there was also mild compression of the spinal

5

cord. (Tr. 448) Due to the presence of stenosis, Dr. Moore recommended cervical decompression with instrumentation and fusion. (Tr. 466, 572) Pre-op physical exams revealed paravertebral spasms in the neck, spine, ribs, and pelvis. (Tr. 643-647, 865-869)

In June, 2013, Plaintiff underwent cervical discectomy and fusion from the C3 level through the C7 level. (Tr. 563-571, 642, 648-701, 888-909) By July, 2013, her upper right extremity symptoms had resolved, but symptoms persisted in the left upper extremity. (Tr. 917) She also complained of back pain with left lower radiculopathy. An examination noted continued weakness in her upper extremities. Due to progressive mechanical back pain with radicular symptoms, numbness, and paresthesias in her lower extremities, Dr. Moore recommended transforaminal lumbar interbody fusion ("TLIF") at the L5-S1 level. (Tr. 927-928) She underwent surgery on August 6, 2013. Plaintiff returned to the hospital the following day with increasing back pain and lower extremity radicular symptoms, including numbness in her foot. (Tr. 930-932) An MRI of her lumbar spine showed residual postsurgical seroma or hematoma, which enveloped the left exiting nerve root and was associated with moderate canal stenosis. (Tr. 925-926) A CT scan of her lumbar also showed a collection of fluid at the surgical site with associated canal stenosis. (Tr. 923-924) She was admitted for pain control, catheterized, and prescribed Lyrica. (Tr. 931)

In September, 2013, Plaintiff reported some improvement in her symptoms, but an exam revealed continued numbness in her left buttock and left foot and difficulty urinating. (Tr. 919-921) Dr. Moore referred her for physical therapy and a urology evaluation.

In February, 2014, Dr. Moore completed a medical source statement ("MSS"). (Tr. 913-915) Due to her cervical radiculopathy, degenerative disk disease, chronic lumbago, and prior cervical and lumbar fusion procedures, he opined Plaintiff could frequently and occasionally lift

6

and carry 10 pounds, sit for 6 hours during an 8-hour workday, stand and walk for less than 2 hours per day; never climb, crouch, or crawl; and, occasionally balance and kneel. Dr. Moore also indicated that she would be limited in her ability to push and pull, reach, and handle.

The ALJ claims to have given Dr. Moore's treating source statement "great weight;" however, his RFC determination failed account for Dr. Moore's assessment of standing and walking less than 2 hours per day and never climbing, crouching, or crawling. Aside from a statement that Dr. Moore's MSS is somewhat consistent with the evidence, the ALJ fails to explain the conflict between his RFC determination and Dr. Moore's opinion. The ALJ also discounts the RFC assessments from the non-examining consultants, who concluded Plaintiff could perform light work with occasional postural activities, but appears to have adopted their assessment of occasional climbing, balancing, stooping, kneeling, crouching, and crawling without explanation. (Tr. 70-71, 81-83)

A review of the record reveals no evidence to contradict Dr. Moore's assessment. Plaintiff reported limited daily activities to include watching television, playing games on the computer, preparing simple meals, going outside daily to check the mail, riding in a car, shopping in stores for food and household supplies weekly, and speaking to family via telephone daily. (Tr. 197-201, 221-228) While we note these are the subjective reports of the Plaintiff that cannot be verified, we do not find that they provide support for the ALJ's RFC assessment as alleged.

Further, the ALJ's contention that there is no evidence to support a deterioration in the Plaintiff's condition following surgery is incorrect. Plaintiff has undergone two surgeries on her back and one procedure on her neck since 2011. Dr. Moore's statement clearly reveals that he based his opinion on both Plaintiff's ongoing symptomology and diagnoses, as well as the fact that the Plaintiff has undergone multiple fusion surgeries. The Court finds that the more stringent

limitations assigned by Dr. Moore can be explained by the fact that the Plaintiff's spine was fused at multiple levels further decreasing the mobility of her spine. Accordingly, the Court finds remand necessary to allow the ALJ to reconsider Plaintiff's RFC and Dr. Moore's MSS. Should the ALJ have questions concerning Dr. Moore's assessment, on remand, he is directed to recontact him to elaborate on the objective bases for his assessment.

### IV. Conclusion

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of August, 2016.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE